**Franklin L. SMITH, Plaintiff,**

v.

**George ROHER, et al., Defendants.**

**Civil Action No. 89–3258 (JHG).**

United States District Court,
District of Columbia.

Feb. 7, 1997.

Susan Eleanore Sutler, D.C. Public Schools, Logan Assessment Center, Pastell Vann, Thomas L. Koger, Meena Sudhakara, Office of Corporation Counsel, D.C., Washington, DC, for Andrew E. Jenkins, III.

Michael Jeffrey Eig, Matthew Barry Bogin, Bogin & Eig, P.C., Washington, DC, Margaret A. Kohn, Kohn & Einstein, Washington, DC, Holly Cohen Cooper, Silver Spring, MD, for defendants.

### MEMORANDUM OPINION AND ORDER

JOYCE HENS GREENE, District Judge.

■ Presently pending is the defendants' Motion for Attorneys' Fees and Costs under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(e)(4)(B) (1994). Upon consideration of the defendants' motion, the opposition thereto, the supplemental pleadings filed in accordance with this Court's Order of May 6, 1996, and the entire record herein, the defendants' mo-

tion will be granted.[1] The plaintiff shall be ordered to pay the defendants $82,663.44.

## I. Background

Congress enacted the IDEA to ensure that children with disabilities are provided with "free appropriate public education which emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(c). Under the IDEA, a disabled child is provided with an individualized education program ("IEP"), which is based upon his or her particular needs and developed through the joint participation of the local education agency, the teacher and the parents. *Id.* §§ 1412(4), 1414(a)(5). The IDEA also establishes procedures for challenging decisions related to disabled children that include administrative hearings and litigation in state or federal court. *Id.* § 1415(e)(2).

The defendants seek attorneys' fees and costs for administrative and civil litigation based on the "stay put" provisions of the IDEA, which provide that "unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then-current educational placement of such child." *Id.* § 1415(e). The defendants were enrolled at the Lab School of Washington during the 1988–89 school year. However, in June of 1989, the plaintiff Superintendent of School for the District of Columbia attempted to change each defendant student's placement. The defendants petitioned for a hearing at which they successfully opposed the changes. On November 2, 1989, an administrative hearing officer ordered the plaintiff to restore funding for each defendant at the Lab School.

The plaintiff Superintendent of Schools sought review of the administrative hearing officer's decision, filing suit in this Court on December 4, 1989. The case was litigated over a period of almost five years, but ultimately was dismissed as moot on November 1, 1994. Although judgment was not entered on the merits, the plaintiff was denied the

relief sought and the defendants successfully preserved the administrative hearing officer's decision below.

Defendants in the civil litigation (who were the petitioners in the administrative hearing below) seek attorneys' fees and costs. Finding the defendants' initial fee petition to be inadequate, the Court ordered the defendants to provide additional information regarding the rates charged, currently and historically, the prevailing market rates, and data regarding the experience of the attorneys who provided the services in this case. *See* Order of May 6, 1996. The Court also provided the plaintiff with an opportunity to respond and to identify with precision the fee amounts, if any, to which it objected.

The defendants' request is broken down as follows:

| | |
|---|---|
| *Roher* | $ 9,647.89 |
| *Jarman* | $ 3,883.77 |
| *Bobier/Daveler* | $ 5,044.70 |
| *Mark* | $ 8,045.92 |
| *Jenkins v. Roher* | $60,261.16 |
| Fee reply | $ 900. |
| Supplemental mem. | $ 1,900. |
| Supplemental reply | $ 1,080. |
| Total | $90,763.44 |

## II. Discussion

The IDEA provides, in relevant part, that "[i]n any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as a part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B). An action or proceeding under the IDEA includes both civil litigation in federal court and administrative litigation before hearing officers. *Moore v. District of Columbia*, 907 F.2d 165, 176 (D.C.Cir.), *cert. denied*, 498 U.S. 998, 111 S.Ct. 556, 112 L.Ed.2d 563 (1990). The plain language of the statute limits an award of fees to parents and guardians who prevail. Resolving attorneys' fees matters involves determining first whether the parents (or guardians) are entitled to

---

1. The defendants have also requested a hearing. Whether to hold a hearing is a matter within the discretion of the Court. *See* Local Rule 108(f). Because a hearing is unnecessary to rule on the pending fees petition and because it would serve to drive the costs of this litigation even higher, the motion will be denied.

fees as prevailing parties and, if so, determining the appropriate amount of an award.

In this case, the defendants seek over $90,000 in fees and costs for both the administrative hearing and the subsequent civil litigation, contending that they are prevailing parties under the IDEA. The plaintiff opposes, arguing that the defendants did not prevail at the judicial level, because the Court's dismissal was not an adjudication on the merits. Moreover, according to the plaintiff, only parents and guardians who are prevailing *plaintiffs*, not prevailing *defendants*, are entitled to attorneys' fees. Additionally, the plaintiff disputes the reasonableness of the fee request.

### A. Prevailing parties

The plaintiff does not, nor could it, object to the defendants' entitlement to fees as the prevailing party at the administrative level. *Moore*, 907 F.2d at 176. Instead, the plaintiff's argument is based on the parents' status as defendants in the judicial litigation and on the fact that the dismissal was based on mootness. Neither argument is persuasive.

█ To be eligible for attorneys' fees under the IDEA, the parent or guardian must fall within the definition of prevailing party. *See Texas State Teachers Ass'n v. Garland Ind. School District*, 489 U.S. 782, 789, 109 S.Ct. 1486, 1492, 103 L.Ed.2d 866 (1989); *see also Farrar v. Hobby*, 506 U.S. 103, 109–10, 113 S.Ct. 566, 571–72, 121 L.Ed.2d 494 (1992).[2] A party prevails when it obtains a direct benefit that materially alters the legal relationship between the parties. *Farrar*, 506 U.S. at 111, 113 S.Ct. at 572–73; *Garland*, 489 U.S. at 792, 109 S.Ct. at 1493–94. The critical factor is the degree of success obtained, *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983), and the "logical place to look for recovery of fees is to the losing party." *Kentucky v. Graham*, 473 U.S. 159, 164, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985).

At the administrative stage, the defendants sought an administrative hearing and pre-

vailed on their objective to restore funding at the Lab School. The plaintiff then sought to have the hearing officer's decision overturned in federal court, as it has a right to do. The defendants' objective at the judicial level shifted from one of offense to one of defense. Before this Court, they simply desired to preserve the decision below. Ultimately, they succeeded, obtaining a dismissal of the complaint after lengthy proceedings. In both the administrative and judicial fora, the defendants attained their objectives. Overall, the relationship between the parties was materially altered, and there is no denying that the defendants benefitted directly from both the hearing officer's decision of November 2, 1989, and this Court's dismissal of November 1, 1994.

█ The plaintiff's argument to deny the prevailing defendants fee is inconsistent with the plain text of the statute and its underlying purpose as well as the case law construing the meaning of "prevailing party." Contrary to the plaintiff's view, the statute does not limit fee awards to prevailing *plaintiffs*, but to prevailing *parties*. While the defendant parents were placed in a defensive posture because the plaintiff Superintendent of Schools sought review of the hearing officer's decision, the offensive or defensive nature of the parents' position is irrelevant. *See, e.g., Rapid City School District v. Vahle*, 733 F.Supp. 1364, 1370 (D.S.D.) ("That the *defendants* are prevailing parties is without doubt.") (emphasis added), *aff'd*, 922 F.2d 476, 478 (8th Cir.1990). Similarly, the defendant parents here attained their objective in this litigation: through their motion to dismiss, they preserved the *status quo* and thereby succeeded on a significant issue. *See Hacienda La Puente Sch. Dist. v. Honig*, 976 F.2d 487, 496 (9th Cir.1992) (parent appellees entitled to fees under the IDEA when they succeeded in opposing school district's appeal of district court's decision and thereby preserved *status quo* ).

█ Entitlement to an award of attorneys' fees under the IDEA is not limited to those

---

2. In construing the IDEA, Congress intended for the courts to rely upon interpretations of the term "prevailing party" in the attorneys' fee-shifting provisions of 42 U.S.C. § 1988 (1994).

*See* H.R.Rep. No. 296, 99th Cong., 1st Sess. 5 (Oct. 2, 1985); S.Rep. No. 112, 99th Cong., 1st Sess. 13 (July 16, 1985); *Beard v. Teska*, 31 F.3d 942, 950 & n. 8 (citing cases).

proceedings in which the parents obtain a judgment on the merits. *See, e.g., Borengasser v. Arkansas State Bd. of Educ.,* 996 F.2d 196, 199 (8th Cir.1993) (parents entitled to attorneys' fees under IDEA where they obtained motion to enforce agreement); *Wheeler by Wheeler v. Towanda Area School Dist.,* 950 F.2d 128, 132 (3rd Cir.1991) (parents entitled to attorneys' fees even though litigation did not result in favorable judgment because pressure created by the lawsuit was a material factor in obtaining desired relief); *E.M. v. Millville Bd. of Educ,* 849 F.Supp. 312, 316–17 (D.N.J.1994) (although parents did not obtain a favorable judgment, they were entitled to attorneys' fees under IDEA because they prevailed on the significant issue of the case); *Capiello v. District of Columbia,* 779 F.Supp. 1, 2 (D.D.C.1991) (parents entitled to fees where they obtained temporary restraining order to compel compliance with administrative hearing officer's decision). Fees should normally be awarded under the IDEA unless special circumstances make such an award unjust. *Borengasser,* 996 F.2d at 199; *Abu–Sahyun v. Palo Alto Unified School Dist.,* 843 F.2d 1250, 1252 (9th Cir.1988).

The parents here succeeded in their quest to defend before this Court and preserve their victory at the administrative level. Simply put, they obtained their ultimate objective through the granting of their motion to dismiss in this litigation. They achieved a direct benefit and the overall legal relationship between the parties was materially altered. There is nothing about this case that would make an award of attorneys' fees to the parents unjust. The parent defendants are therefore entitled to reasonable attorneys' fees as prevailing parties under the IDEA, 20 U.S.C. § 1415(e)(4)(B).

### B. Reasonable fees

An award of attorneys' fees is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended on the case. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939–40. This calculation produces the "lodestar," which may be adjusted depending on the results of the litigation. *Blum v. Stenson,* 465 U.S. 886, 903, 104 S.Ct. 1541, 1551, 79 L.Ed.2d 891 (1984). The prevailing party bears the burden to justify the reasonableness of the fees sought. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate." *Blum,* 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11; *see also Missouri v. Jenkins,* 491 U.S. 274, 286, 109 S.Ct. 2463, 2470–71, 105 L.Ed.2d 229 (1989); *Covington v. District of Columbia,* 57 F.3d 1101, 1108–09 (D.C.Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 916, 133 L.Ed.2d 847 (1996).

### *The hourly rate*

The defendants seek an award at current rates to compensate for the delay in the payment of fees. The plaintiff filed the suit in 1989, and the defendants did not prevail until 1994. The plaintiff opposes an award at the current hourly rates and argues that the appropriate award is at counsel's historic hourly rate plus interest to compensate for the delay.

As the Supreme Court has noted, "[c]learly, compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings." *Jenkins,* 491 U.S. at 283, 109 S.Ct. at 2469. In *Jenkins,* the Court sanctioned an adjustment for delay, and our Circuit has approved the use of current hourly rates to calculate attorneys' fees awards. *See, e.g., King v. Palmer,* 906 F.2d 762, 769 (D.C.Cir.1990), *vacated on other grounds,* 950 F.2d 771 (D.C.Cir.1991) (en banc), *cert. denied sub nom., King v. Ridley,* 505 U.S. 1229, 112 S.Ct. 3054, 120 L.Ed.2d 920 (1992); *Murray v. Weinberger,* 741 F.2d 1423, 1433 (D.C.Cir.1984). While the Court has the discretion to award fees at the current rate, she is nevertheless obligated to ensure that the rate awarded is consis-

tent with the market, that it is the appropriate way to compensate for the delay, and that it does not result in a "windfall" to the prevailing party. *See Jenkins,* 491 U.S. at 283–84, 109 S.Ct. at 2469–70; *Murray,* 741 F.2d at 1433.

■ In the instant case, the use of current rates is appropriate. First, the complaint was filed by the plaintiff Superintendent of Schools, placing the parents (who prevailed at the administrative hearing) in a defensive posture in 1989. The bulk of the legal expenses were incurred in 1989, 1990 and 1991—five to seven years before the prevailing defendants filed their fee request. This lengthy time period is more than sufficient to justify the use of current rates to compensate for the delay. *See King,* 906 F.2d at 769; *Murray,* 741 F.2d at 1433. Second, the use of current rates eases the administrative burden of calculating the proper award. *See Murray,* 741 F.2d at 1433. Over the pendency of this action, counsel's hourly rate has changed a number of times as have the prevailing rates of interest. The use of current hourly rates acts as a surrogate for interest, *see King,* 906 F.2d at 769, and, in this case, an award based on current rates would ease the administrative burden of calculating the appropriate award. Finally, upon consideration of a comparison of the amounts sought based on current rates in light of what might be awarded based on historical rates, it is clear that the use of current rates would not result in a windfall.[3]

The usual billing rate is presumptively reasonable provided that it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Kattan v. District of Columbia,* 995 F.2d 274, 278 (D.C.Cir.1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 71 (1994). Here, the defendants have sufficiently demonstrated that their current billing rates are reasonable and consistent with the prevailing market rate.[4] *See Bailey v. District of Columbia,* 839 F.Supp. 888, 890–91 (D.D.C. 1993). The fee award will be based on the following rates:

| | |
|---|---|
| Mathew Bogin and Michael Eig | $250/hour |
| Associates | $180/hour |
| Consultants | $110/hour |
| Paralegals and support staff | $85/hour |

### Hours reasonably expended

■ The Court must exclude from the fee award any hours that were not "reasonably expended." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939–40. The prevailing party shoulders the burden to provide the Court with sufficient evidence to justify its request, *see In re North,* 8 F.3d 847, 852 (D.C.Cir. 1993), and the Court has considerable discretion in evaluating its reasonableness. *Kattan,* 995 F.2d at 278. The Court must reduce a fee award if the time spent is excessive. 20 U.S.C. § 1415(e)(4)(F)(iii). Upon consideration of the defendants' request and the plaintiff's objections thereto, the Court has determined that the request is reasonable with the following exceptions:

1. *Jenkins v. Roher*—(defendants request $60,261.16).

■ a. *Filing pleadings.* The plaintiffs object to the defendants' use of attorneys to file pleadings. In four instances, the defendants used an associate and charged at the associate rate for filing pleadings with the Clerk of Court. *See* Billing Record of Lopez (billing $144 for filing on Dec. 11, 1991 and $72 on Jan. 13, 1992); Billing Record of Kohn (billing $54 on Jan. 22, 1992 and $36 on Apr. 4, 1990). Once, the defendants even billed at the partner rate for filing. *See* Billing Record of Bogin (billing $225 on Sept. 6, 1990).[5] Additionally, the defendants used

---

3. Since the Court will base the award on current rates, no enhancement for delay will be added to the lodestar. *See Murray,* 741 F.2d at 1433.

4. *See* Supplemental Memorandum in Support of Defendants' Motion for Attorneys' Fees and Costs, at 1 (May 20, 1996) (filed in response to the Court's Order of May 6, 1996).

5. The defendants suggest that counsel filed these motions when they were at the Courthouse for other purposes. *See* Defendants' Reply, at 6. While the billing records provided to the Court do not indicate that counsel were at the Courthouse on the days at issue for matters related to this case, the Court does not dispute the defendants' representation. Nevertheless, regardless of the purpose for counsels' sorties to the Courthouse, it is inappropriate to bill at associate or partner rates for tasks at the paralegal/support staff level.

an associate to effectuate service. *See* Billing Record of Kohn (billing $36 on Apr. 4, 1990). While the defendants may use their attorney resources however they see fit, it is excessive to bill for these services at other than a paralegal rate. Accordingly, the Court will replace the amounts charged at the associate and partner rates with amounts charged at the paralegal/support staff rate. This results in a net reduction of $329.[6]

■ b. *Telephone call.* Attorney Cooper billed twelve minutes and $36 merely to "[p]lace call to opposing counsel—*left message* re: motion for enlargement." Billing Record of Cooper (Nov. 4, 1990) (emphasis added). The defendants do not explain why it took twelve minutes to leave a message. Because $36 is clearly excessive, this charge will be reduced by $30 to $6 (representing two minutes—a reasonable time to leave a message).

■ c. *Various motions for enlargements.* The plaintiff objects to paying for the defendants to prepare and file various motions for enlargements. In response, the defendants state that "[s]uch motions are part of the practice of law." Defendants' Reply, at 5 (filed June 11, 1996). While a motion for an enlargement may in fact be part of the practice of law, absent some reasonable justification for a given motion (and none has been provided by the defendants), it is not reasonable to require the plaintiff to foot the bill for the defendants' requested extensions. The costs related to motions for enlargements will be deducted, resulting in a net reduction of $270.[7]

■ d. *Attorney Lopez's file review.* The plaintiff objects to Attorney Lopez billing $720 to review a file on Nov. 11, 1991

when "the next entry for services rendered is not until a month later." Plaintiff's Response to Defendants' Supplemental Memorandum, at 9–10 (filed June 3, 1996). The plaintiff asks: "Toward what end did Mr. Lopez review a file on 11/11/91?" *Id.* at 10. The Court is left with the same question, and the defendants have failed to provide an adequate response in their reply (or elsewhere).[8] The billing for $720 will be stricken.

■ e. *The Motion to Dismiss.* The plaintiff objects to excessive billing in connection with a motion to dismiss and a reply filed in the Spring of 1990. Attorney Bogin billed at the partner rate of $250 for approximately 11 hours between February 2, 1990 and March 28, 1990 to prepare and file a motion to dismiss and a reply. Attorney Eig billed at the partner rate for approximately 5.5 hours between February 20, 1990 and February 28, 1990, in connection with the same motion. To justify such billing the defendants contend that they have met their burden simply by submitting the bills and declarations. However, billing two partners for over sixteen hours (at $250/hour) for this purpose is excessive, and the defendants have not adequately justified why the efforts of two partners (at the highest rate) were required or justified. It is nevertheless reasonable for a partner to work with an associate. Accordingly, the associate rate will be substituted for the rate charged by Attorney Eig. The total will be reduced by $385, the difference between the rate charged by Attorney Eig and that chargeable based upon the associate rate.

f. *Court appearances.* The plaintiff objects to paying for two partners to appear at the hearings on January 16, 1990 and Janu-

---

6. For filing, the defendants billed 1 hour 54 minutes at the associate rate, totaling $342; at the paralegal/support staff rate, the total is $161.50. The defendants billed 54 minutes at the partner rate, totaling $225; at the paralegal/support staff rate, the amount is $76.50.

7. This amount is comprised of $180 billed by Attorney Lopez (1 hour on Dec. 20, 1991) and $90 billed by Attorney Cooper, which includes a telephone call to obtain the plaintiff's consent (54 minutes on Nov. 2, 1994, and 12 minutes on Nov. 8, 1994).

8. The defendants did not expressly address this issue. To the extent a response can be found, it appears to be that they would contend that the plaintiff's objections constitute "nitpicking" and an "impermissible effort[] to second-guess the defendants' legal strategy," Defendants' Reply, at 7, or a challenge to matters that constitute the routine practice of law. *See id. passim.* The defendants apparently have not recognized that they carry the burden to justify the fees they seek. Where, as here, the source of the money is the public fisc, the Court scrutinizes the billing records very closely.

ary 29, 1990. In reply, the defendants merely state that they "staff appropriately and object to plaintiff's repeated unfounded attempts to second-guess their use of resources." Defendants' Reply, at 7. This response is inadequate to justify billing for two partners at the $250/hour rate. While certain matters may be so complicated that the presence/participation of two partners at a hearing is justified, the defendants have not so contended here. Since the defendants have not adequately justified this billing, Attorney Eig's billing of $1,000 (for four hours on Jan. 16, 1990) and Attorney Bogin's billing of $725 (for approximately three hours on January 29, 1990) will be stricken.[9]

Accordingly, the amount awarded will be reduced by a total of $3,459, resulting in an award of **$56,802.16.**

2. *Roher*—(defendants seek $9,647.89).

The plaintiff objects to a letter to "LSW re determination," which Attorney Eig billed twice for $125 on Nov. 30, 1989. The defendants concede that this double billing was in error.

Since the balance of the request appears to be reasonable, **$9,522.89** will be awarded.

3. *Jarman*—(defendants seek $3,883.77).

a. *Duplicate billing.* The plaintiff objects to paying fees associated with five entries that are identical (down to the typographical errors) to those billed in *Roher* (and two other cases) for correspondence and a telephone conference between September 21, 1989 and October 4, 1989. The defendants respond that the "[l]etters were drafted regarding four separate clients and billed appropriately." Defendants' Reply, at 7. The Court accepts the defendants' representation that four letters were drafted and sent for each client, but she cannot accept that the billing approach is reasonable. While the billing would be justified for one client, it is excessive in relation to the nature of these cases to charge each of four clients for time spent on virtually the same task. The Court has rejected this billing practice before, *see*

*Bridgeforth v. District of Columbia*, 933 F.Supp. 7 (D.D.C.1996), and she will reject it here. While some additional costs may reasonably be incurred under this approach, the full amount charged is unjustified. The five entries will be reduced by a factor of eighty (80) percent and the award for *Jarman* will therefore be reduced by $280.

Accordingly, the amount awarded will be reduced by a total of $280, making the award **$3,603.77.**

4. *Bobier/Daveler*—(defendants seek $5,044.70).

a. *Duplicate billing.* This billing suffers from similar defects as in *Jarman;* the correspondence to Robert Burch on September 21 and 28, 1989 ($75 each) is duplicative with *Roher;* therefore, $120 will be stricken. Additionally, the "correspondence to opposing counsel involving stay put provision after review of file" on October 19, 1989 is generally duplicative of that billed in *Jarman,* and it will be reduced by $240 (or eighty (80) percent of the $300 billed).

b. *Double entry.* The plaintiff objects to paying twice for preparation of the final draft of a motion for a temporary restraining order on September 14, 1989. The defendant concedes that this double billing was an error. The award will be reduced by $550.

Accordingly, the amount awarded will be reduced by a total of $910, making the award **$4,134.70.**

5. *Mark*—(the defendants seek $8,045.92).

a. *Duplicate billing.* This billing suffers from the same defects as the billing in *Jarman;* therefore, $280 will be stricken.

b. *File review for proof of service.* The defendants have charged at the partner rate for Attorney Eig's work to review a file for a proof of service. This is excessive, and will be reduced to the rate chargeable by a paralegal; the bill will be reduced by $66.

---

**9.** The Court will allow the defendants to charge for Attorney Eig's billing of $1,000 (for four hours on Jan. 29, 1990) and for Attorney Bogin's billing of $1,175 (for 4:42 hours on Jan. 16, 1990).

Accordingly, the amount awarded will be reduced by a total of $346, making the award $7,699.92.

### 6. *Attorneys' fees for reply and supplemental filings.*

█ The request for $900 in fees and costs associated with the defendants' reply to the plaintiff's opposition to the fee request is reasonable, and it will be granted. However, the fees and costs sought for filing the supplemental filings will be denied. The supplemental filings were necessary only because the defendants' initial application was deficient. It is unreasonable for the plaintiff to be forced to shoulder the economic burden for the defendants' errors.

### C. The award

| Case/client | Requested | Adjusted | Awarded |
|---|---|---|---|
| *Roher* | $ 9,647.89 | ($125.) | $9,522.89 |
| *Jarman* | $ 3,883.77 | ($280.) | $3,603.77 |
| *Bobier/Daveler* | $ 5,044.70 | ($910.) | $4,134.70 |
| *Mark* | $ 8,045.92 | ($346.) | $7,699.92 |
| *Jenkins v. Roher* | $60,261.16 | ($3,459.) | $56,802.16 |
| Fee reply | $ 900. | 0 | $900. |
| Supplemental mem. | $ 1,900. | ($1,900) | 0 |
| Supplemental reply | $ 1,080. | ($1,080) | 0 |
| Total | $90,763.44 | ($8,100.00) | $82,663.44 |

### III. Conclusion

Accordingly, it is hereby

**ORDERED** that the defendants' fee application is granted; the defendants shall be, and hereby are, awarded fees and costs in the amount of $82,663.44. Judgment shall be entered this date by a separate Judgment Order in accordance with Fed.R.Civ.P. 58; and it is

**FURTHER ORDERED** that the defendants' request for a motions hearing is denied.

IT IS SO ORDERED.

### *JUDGMENT*

In accordance with the Memorandum Opinion and Order issued this date and pursuant to Fed.R.Civ.P. 58, judgment is hereby entered against the plaintiff and in favor of the defendants in the amount of $82,663.44.

IT IS SO ORDERED.