Carey D. CARTER, Plaintiff,

v.

DISTRICT OF COLUMBIA, Defendant.

Civil Action No. 10–cv–1959 (RLW).

United States District Court,
District of Columbia.

Sept. 30, 2012.

Charles Anthony Moran, Fairfax, VA, Pamela Hope Roth, Washington, DC, for Plaintiff.

Laura George, Tasha Monique Hardy, Office of Attorney General, Washington, DC, for Defendant.

### ORDER AND FINAL JUDGMENT

ROBERT L. WILKINS, District Judge.

On July 27, 2012, the magistrate judge's report and recommendation was entered and the parties were allowed therein fourteen (14) days in which to file objections to the recommendations made by the magistrate judge. No objections have been filed as of this date.

After careful consideration of the record in this case, the magistrate judge's report and recommendation and objections thereto, the court hereby ADOPTS the report and ACCEPTS the recommendations of the magistrate judge; and it is, therefore,

ORDERED, ADJUDGED and DECREED that Plaintiff's Motion for Summary Judgment (Dkt. No. 8) is and that Defendants' Cross–Motion for Summary Judgment (Dkt. No. 15) is **GRANTED IN PART AND DENIED IN PART;** and

**IT IS FURTHER ORDERED** that Plaintiff is awarded $4,100.62 for attorneys' fees and that the Plaintiff is not entitled to prejudgment interest.

This is a final appealable order.

**SO ORDERED.**

### REPORT AND RECOMMENDATION

ALAN KAY, United States Magistrate Judge.

This case was referred to the undersigned for a Report and Recommendation pursuant to Local Civil Rule 72.3(a) regarding Plaintiff Carey Carter's Motion for Summary Judgment and Memorandum of Points and Authorities in Support thereof ("Pl.'s Mot.") [8]; Defendant District of Columbia's Opposition to the Motion for Summary Judgment [14] and Cross–Motion for Summary Judgment [15] (collectively "Def.'s Opp.") [1]; Plaintiff's Response to the Cross–Motion [18] and Reply to the Opposition [19] (collectively "Pl.'s Reply") [2]; Defendant's Reply to Plaintiff's Opposition [20]; and Plaintiff's Rebuttal to Defendant's Reply [21]. *See* March 2, 2012 Minute Order (noting the referral). Plaintiff requested from the District of Columbia ("the District" or "Defendant") a total of $11,480.00 in legal fees, of which the District has paid $7,087.50. (Plaintiff's Statement of Material Facts [8–2] at 1.) Plaintiff's instant Motion requests Summary Judgment for the additional $4,392.50. *Id.* Defendant's Cross–Motion seeks Summary Judgment claiming the

---

**1.** [14] and [15] are the same consolidated document.

**2.** [18] and [19] are also the same consolidated document.

District has sufficiently reimbursed Plaintiff for attorney fees. Upon consideration of the Motion, Opposition, and Reply, and for the reasons set forth, the undersigned recommends that Plaintiff's Motion for Summary Judgment be granted in part and denied in part, and Defendant's Cross–Motion for Summary Judgment be granted in part and denied in part.

## I. BACKGROUND

Carey Carter ("Plaintiff") is the surrogate parent of a minor child who was the subject of an administrative action brought pursuant to the Individuals with Disabilities Education Act and the Individuals with Disabilities in Education Improvement Act (collectively "IDEA"), 20 U.S.C. § 1400 *et seq.* The IDEA guarantees all children with disabilities a Free Appropriate Public Education ("FAPE"). 20 U.S.C. § 1400(d)(1)(A). The IDEA also requires school districts to identify, locate, and evaluate all children with disabilities residing in the State who are in need of special education and related services. 20 U.S.C. § 1412(a)(3)(A). Pursuant to 20 U.S.C. § 1415(i)(3)(B), a court may award attorney fees to a parent who prevails in an IDEA proceeding.

Plaintiff participated in a June 23, 2010 due process hearing at which the Hearing Officer considered whether the District of Columbia Public Schools ("DCPS") failed to identify her son as a student with a disability and provide him with necessary services since May 2009. (June 29, 2010 Hearing Officer Decision ("HOD") at 2.) The Hearing Officer also considered whether DCPS denied her minor child a FAPE as required under the law. *Id.*

After hearing ample evidence about Plaintiff's son's many detentions and suspensions since May 2009 for use of profanity, disrupting class time, destruction of property and threatening behavior, the Hearing Officer concluded that DCPS did not provide the minor child a FAPE when "he was not considered for special education and related services." (HOD at 2–3, 7.) The Hearing Officer further noted that "the student is demonstrating a pattern that is consistent with the IDEIA emotional disturbance definition; however current evaluation and additional assessment may be necessary; along with a discussion by a MDT prior to a final determination on disability category can be made." (HOD at 6.) Ultimately, the Hearing Officer ordered DCPS to convene a Multi–Disciplinary Team ("MDT") "to determine if any evaluations or assessments of the student are necessary to make an eligibility for special education services determination...." (HOD at 7.) The Hearing Officer also ordered DCPS to perform or fund all such evaluations and "convene an MDT/ IEP [Individual Education Plan] with appropriate personnel to review the evaluation; develop an IEP and discuss placement if warranted...." *Id.*

On February 6, 2010, Plaintiff moved for summary judgment to collect attorney's fees relating to the IDEA administrative proceeding. (Pl.'s Mot. [8–1] at 2.) Pamela Roth ("Ms. Roth") represented Plaintiff in the administrative hearing. *Id.* Ms. Roth documented 32.8 hours of attorney time, which were billed at $350.00 per hour, totaling $11,480.00. (Pl.'s Mot., Ex. 2 [Attorney timesheet] [8–6].) Ms. Roth has not requested any costs associated with copies, facsimiles, or other expenses.

On August 12, 2010, Plaintiff submitted an invoice to the District for attorney fees, requesting $11,480.00. *Id.* On August 26, 2010, the District paid $7,087.50, leaving a remainder of $4,392.00 that Plaintiff claims is still owing. (Pl.'s Mot., Ex. 3 [DCPS

payment records].)[3]

## II. LEGAL STANDARD

A party moving for summary judgment on legal fees accordingly must demonstrate prevailing party status and the reasonableness of the fees requested in terms of hours spent and hourly rate. Under Fed.R.Civ.P. 56(a), summary judgment shall be granted if the movant shows that there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(a)). Summary judgment should be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The court is required to draw all justifiable inferences in the nonmoving party's favor and to accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. The nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. The non-moving party cannot rely on allegations or conclusory statements; instead, the non-moving party is obliged to present specific facts that would enable a reason-

able jury to find it its favor. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C.Cir.1999).

### A. Prevailing Party

 The IDEA gives courts authority to award reasonable attorney's fees to the parents of a child with a disability who is the prevailing party. 20 U.S.C. § 1415(i)(3)(B).[4] The court must initially determine whether the party seeking attorney's fees is the prevailing party. *Jackson v. District of Columbia*, 696 F.Supp.2d 97, 101 (D.D.C.2010). A party is generally considered to be the prevailing party if he succeeds "on any significant issue in litigation which achieves some of the benefit sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–279 (1st Cir.1978)).

 The Supreme Court has indicated that the term "prevailing party" only includes plaintiffs who "secure a judgment on the merits or a court-ordered consent decree." *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't Health & Human Resources*, 532 U.S. 598, 600, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).[5] The Supreme Court therefore rejected the "catalyst theory" whereby a plaintiff would be a prevailing party if the lawsuit brought about the desired result through a voluntary change in the defendant's conduct. *Id.* at 605, 121 S.Ct. 1835. The Supreme Court instead determined that a prevailing party must obtain a "material alternation

---

**3.** In accordance with the DCPS guidelines, DCPS applied an hourly rate of $225.00 to the legal fees billed.

**4.** An action or proceeding under IDEA includes both civil litigation in federal court and administrative litigation before hearing officers. *Smith v. Roher*, 954 F.Supp. 359, 362 (D.D.C.1997); *Moore v. District of Columbia*, 907 F.2d 165, 176 (D.C.Cir.1990), *cert.*

*denied*, 498 U.S. 998, 111 S.Ct. 556, 112 L.Ed.2d 563 (1990).

**5.** The standards in *Buckhannon* apply to administrative hearings under the IDEA even though the relief granted is administrative as opposed to judicial. *Abarca v. District of Columbia*, Civil Action No. 06–1254, 2007 WL 1794101 *2 n. 1 (D.D.C. June 19, 2007).

of the legal relationship of the parties." *Id.* at 604, 121 S.Ct. 1835 (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). In other words, in order to prevail, the party must have been awarded some relief by the court. *Id.; see also District of Columbia v. Straus,* 590 F.3d 898, 900 (D.C.Cir.2010).

### B. Fee Requests

▮▮▮ The plaintiff has the burden of establishing the reasonableness of any fee requests. *See In re North,* 59 F.3d 184, 189 (D.C.Cir.1995); *Covington v. District of Columbia,* 57 F.3d 1101, 1107 (D.C.Cir. 1995) ("[A] fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates.") "An award of attorneys' fees is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended on the case." *Smith v. Roher,* 954 F.Supp. 359, 364 (D.D.C.1997) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *see also Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

▮▮▮ The IDEA states that "[f]ees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). To demonstrate a reasonable hourly rate, the fee applicant must show: (1) an attorney's usual billing practices; (2) counsel's skill, experience and reputation; (3) the prevailing market rates in the community. *Covington,* 57 F.3d at 1107. The determination of a " 'market rate' for the services of a lawyer is inherently difficult" and is decided by the court in its discretion. *Blum,* 465 U.S. at 896 n. 11, 104 S.Ct. 1541. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence ... that the requested [hourly] rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* Additionally, an attorney's usual billing rate may be considered the "reasonable rate" if it accords with the rates prevailing in the community for similar services by lawyers possessing similar skill, experience and reputation. *Kattan by Thomas v. District of Columbia,* 995 F.2d 274, 278 (D.C.Cir.1993).

## III. ANALYSIS

### A. Prevailing Party

▮▮▮ Defendant argues that the Plaintiff in the instant case is not a prevailing party because the Hearing Officer only ordered the District "to determine *whether* the student required evaluations or assessments and to complete the eligibility process," rather than actually finding that the student was eligible for special education services or that the student was denied a FAPE. (Def.'s Opp. at 4.) Plaintiff's underlying due process complaint asserted that the District denied her child a FAPE and, as relief, she requested the convening of a MDT be convened, the development of an IEP, and that her child be granted a compensatory education award.[6] (HOD at 1.) While it is true that the Hearing Officer did not determine whether the student was eligible for special education services at the time of the hearing, the HOD did order the District to "convene an MDT/IEP." *Id.* at 7. Also, contrary to what

---

6. At the preliminary stage of the hearing, Plaintiff withdrew the compensatory education request because an expert witness was not available. (HOD at 1, n.4; *see also* Pl.'s Reply 5.)

Defendant argues, the Hearing Officer concluded that "the student was denied a FAPE when he was not considered for special education and related services." *Id.* Thus, it appears Plaintiff prevailed on some, if not all, of the significant issues for which she brought suit.

The undersigned finds that Plaintiff did accomplish her primary objective at the administrative hearing when the Hearing Officer ordered DCPS to convene a MDT to determine the necessity of any evaluations and to further perform all such evaluations. (HOD at 7.) The purpose of such evaluations, which included an educational achievement assessment, was "to determine [the student's] eligibility [for special education services]. . . ." *Id.* While the Hearing Officer did not determine that the child was eligible for special education services or issue an IEP, the undersigned notes that such determination would be premature in the instance where a plaintiff requires evaluations prior to a finding of eligibility.[7] Accordingly, the undersigned finds that Plaintiff is a prevailing party and, further, that she is entitled to recover her legal fees.

### B. Reasonableness of Hourly Rates

Plaintiff offered evidence sufficient to establish her attorney's experience, skill, and reputation in IDEA matters, (Pl.'s Mot., Roth's Decl. [8–4] ), and contends that her attorney Ms. Roth should be compensated at a rate of $350 per hour for work performed, (Pl.'s Mot., Ex. 2 at 3). Plaintiff argues that the hourly rates set forth in the *Laffey* Matrix have been applied in many IDEA fee cases and further asserts that Ms. Roth's rates are reasonable because they *fall well below* the *Laffey* rates. (Pl.'s Mem. in Supp. at 4–5[8–3] (emphasis added).) The *Laffey* Matrix was created to follow rates charged by litigators who practice complex federal litigation in the District of Columbia, which are presumptive maximum rates for such litigation. *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354, 374 (D.D.C.1983) *aff'd in part, rev'd in part on other grounds,* 746 F.2d 4 (D.C.Cir.1984) ("the relevant legal market in this action is complex employment discrimination litigation"). The United States Attorney's Office for the District of Columbia updates the Matrix annually to reflect increases in the local Consumer Price Index. *Rooths v. District of Columbia,* 802 F.Supp.2d 56, 61 (D.D.C.2011). Applying *Laffey* rates would provide Ms. Roth, an attorney with over 20 years of experience, with $465 per hour for the period through May 31, 2010, and $475 per hour beginning on June 1, 2010. (Pl.'s Mot., Ex. 4 [*Laffey* Matrix] at 1.)

Defendant opposes the use of the *Laffey* Matrix for calculating hourly rates and instead advocates for the use of the DCPS scale. (Def.'s Opp. at 5–7.) Under the DCPS scale, a lawyer like Ms. Roth, who was admitted to the bar for more than eight years, is entitled to $200 to $275 per hour. (Pl.'s Mot., Ex. 5 [DCPS Guidelines] at 3.) Defendant's opposition to *Laffey* rates relies upon the decisions in *McClam v. District of Columbia,* 808 F.Supp.2d 184 (D.D.C.2011) and *Rooths,* 802 F.Supp.2d at 56 (D.D.C.2011), where maximum *Laffey* rates were determined to be inapplicable to IDEA cases because these types of cases do not involve complex litigation. (Def.'s Opp. at 6–7.) In *McClam,* Judge Collyer stated that despite the work in-

7. It is also worth mentioning that "the meeting held as a consequence of the HOD resulted in a determination that the child is eligible for special education services, and further, [this] resulted in an IEP that assigns a full time aide to the student." (Pl.'s Rebuttal [21] at 1.)

volved, "IDEA cases are generally not complex" and that particular case had "no novel issue or other complexity that turned this particular IDEA case into complex litigation." 808 F.Supp.2d at 190. As such, she held that the District's proposed rates in that case—$300 per hour through December 9, 2010 and $400 thereafter—were reasonable. *Id.*

In *Rooths*, 802 F.Supp.2d at 63, Judge Friedman similarly found that:

This litigation does not much resemble the sort of complicated cases in which a plaintiff's counsel is appropriately awarded fees at the maximum allowable rate. Like most IDEA cases, the claim on which the plaintiff prevailed in this action involved very simple facts, little evidence, and no novel or complicated questions of law.

Judge Friedman then awarded the plaintiff a rate equal to three-quarters of the *Laffey* rate. *Id.*

Defendant further argues that "*Laffey* rates are not presumptively appropriate, and reference to them does not render lower rates per se reasonable." Def.'s Opp. at 7; *see also Lively v. Flexible Packaging Assoc.*, 930 A.2d 984, 990 (D.C. 2007) (accepting the *Laffey* Matrix as one legitimate means of calculating attorney's fees and using it as a starting point instead of an automatic application). Federal courts do not automatically have to award *Laffey* rates but instead they can look at the complexity of the case and use their discretion to determine whether such rates are warranted. *See Muldrow v. Re–Direct, Inc.*, 397 F.Supp.2d 1, 4–5 (D.D.C. 2005) (awarding fees at a rate 25% less than *Laffey* in a "relatively straightforward negligence suit").

The administrative hearing in the instant case involved twenty exhibits and seven testifying witnesses, and it resulted in a nine-page decision by the Hearing Officer. (Pl.'s Mot., Ex. 1 at 2.) The undersigned does not dispute that Ms. Roth's knowledge of IDEA law, experience, and her understanding of the procedural aspects of the hearing helped her to obtain a favorable decision for her client. (HOD at 7.) Like *McClam* and *Rooths*, however, no evidence exists that the hearing presented a novel legal issue or was significantly more complex than most IDEA hearings. Instead, the instant case was a routine administrative hearing similar to those in *McClam* and *Rooths* in which maximum *Laffey* rates were deemed unreasonable.

Having determined that the maximum rates for complex federal litigation are not appropriate, the undersigned is faced with determining the appropriate rates for this "representative" IDEA litigation. The District proposes a rate of $225.00 per hour for Ms. Roth's work in this case, as set out in the DCPS Attorney Fees Guidelines; however, the District provides no rationale for how the rates in its Guidelines were determined. In addition, the undersigned is not prepared to allow DCPS, the defendant in most IDEA cases in the District of Columbia, to set the rates for attorneys who bring cases against it, where the statute directs the court in its discretion to award reasonable attorney's fees.

The undersigned finds that this is a straightforward non-complex case seeking IDEA legal fees and that the *Laffey* Matrix rates are the presumed maximum rates appropriate for "complex federal litigation," *Covington v. District of Columbia*, 57 F.3d at 1103. Accordingly, the undersigned recommends that the trial court follow Judge Friedman's determination of hourly rates in *Rooths*, which awarded rates equal to three-quarters of the *Laffey* rates. Because Ms. Roth has 20 years of more of experience, the undersigned further recommends that Ms. Roth's hourly

rate be $348.75 through May 31, 2010, and $356.25 thereafter.[8]

### C. Reasonable Hours

 The District challenged the 1.3 hours of billing for the Resolution Meeting on May 27, 2010, on grounds that the IDEA expressly precludes the recovery of attorney's fees for resolution sessions pursuant 20 U.S.C. § 1415(i)(3)(D)(iii). (Def.'s Opp. at 5.) Plaintiff agreed that counsel would not charge for 1.3 hours of billing for the May 27, 2010 Resolution Meeting. (Pl.'s Reply at 7.) In light of the fact that DCPS did not contest any other hours billed by counsel and the number of hours appears to be reasonable, the undersigned finds that Plaintiff is entitled to compensation for the remaining 31.5 hours of attorney time.

### D. Prejudgment Interest

 Plaintiff requests prejudgment interest at 4% on the attorney fee award. (Pl.'s Reply at 9.) Although not explicitly stated, Plaintiff appears to rely on D.C. Code § 15–108, which allows prejudgment interest in an action "to recover a liquidated debt on which interest is payable by contract or by law or by usage." (Def.'s Reply [20].) A liquidated debt is an "easily ascertainable sum." *Am. Nat'l Red Cross v. Vinton Roofing Co., Inc.*, 697 F.Supp.2d 71, 74 (D.D.C.2010) (citing *Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 731 (D.C.2003)). The awarding of prejudgment interest is "subject to the discretion of the court and equitable considerations." *Oldham v. Korean Air Lines Co.*, 127 F.3d 43, 54 (D.C.Cir.1997) (quoting *Motion Picture Ass'n of Am., Inc. v. Oman*, 969 F.2d 1154, 1157 (D.C.Cir. 1992)). Because discretionary attorney's fees are not easily ascertainable, D.C.

Code § 15–108 is not applicable to this action.

Additionally, the IDEA states in pertinent part that ". . . the court, in its discretion, may award reasonable attorneys' fees as part of the *costs* [to a prevailing party]." 20 U.S.C. § 1415(i)(3)(B) (emphasis added). "The term 'costs' has never been understood to include any interest component." *Library of Congress v. Shaw*, 478 U.S. 310, 321, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). Instead, prejudgment interest is considered to be an award for "damages." *Id.* Accordingly, the plain language of the IDEA does not entitle prevailing parties to prejudgment interest on awarded attorney's fees.

Upon consideration that IDEA awards are not easily ascertainable, coupled with the fact that the plain language in the IDEA does not entitle a prevailing party to prejudgment interest, the undersigned recommends that Plaintiff's request for prejudgment interest be denied. Should a court find the IDEA and D.C. Code § 15–108 entitles Plaintiff to prejudgment interest, it is important to note that the purpose of such award is to compensate the plaintiff for any delay in payment resulting from the litigation. *See Motion Picture Ass'n of Am., Inc.*, 969 F.2d at 1157 (stating that "interest compensates for the time value of money and thus is often necessary for full compensation"). Here the District paid the majority of the requested amount and contested the remainder in good faith. Therefore, equitable considerations also weigh against an award of prejudgment interest.

### IV. RECOMMENDATION

For the reasons stated above, the undersigned recommends that Plaintiff's Motion for Summary Judgment [8] be granted in

---

**8.** These hourly rates are close to the $350 per hour originally charged by Ms. Roth.

part and denied in part, and Defendant's Cross–Motion for Summary Judgment [15] be granted in part and denied in part. The District previously paid Plaintiff $7,087.50 for work done in conjunction with this hearing and that amount should be offset from the trial court's award of fees to Plaintiff. Plaintiff has agreed to drop its demand for reimbursement of fees attributable to the Resolution Meeting [1.3 hours] and no other fee entries have been challenged by Defendant. Ms. Roth performed 4.5 hours of work at a recommended rate of $348.75 per hour and 27 hours at a recommended rate of $356.25 per hour. Accordingly, Plaintiff should be awarded fees in the amount of $11,188.12, less the $7,087.50 that was already paid by DCPS. The undersigned thus recommends that Plaintiff be awarded $4,100.62. The undersigned further recommends that the Plaintiff is not entitled to prejudgment interest.

## V. REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn,* 474

U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

June 26, 2012